**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRONTIER REFINING INC., a
Wyoming corporation;
COMMERCIAL UNION
ASSURANCE COMPANY, PLC;
OCEAN MARINE INSURANCE
COMPANY, NORTHERN
ASSURANCE COMPANY, LTD.,
INDEMNITY MARINE ASSURANCE
COMPANY, LTD., SIRIUS (UK)
INSURANCE PLC, UNI
STOREBRAND
SKADEFORSIKRING, CODAN
INSURANCE, HOUSTON
CASUALTY INSURANCE
COMPANY, GJENSIDEGE
FORSIKRING, HULL AND
COMPANY and ALEXANDER
HOWDEN ENERGY, INC.,

    Plaintiffs-Appellants

No. 96-8014

v.

GORMAN-RUPP COMPANY, INC.,
an Ohio corporation,

       Defendant-Appellee,

-------------------------------

JOE M. TEIG and HOLLAND &
HART,

       Movants.

---

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 94-CV-172)

---

Submitted on the briefs:

John M. Palmeri, Thomas B. Quinn and Christopher P. Kenney, White and Steele, P.C., Denver, Colorado, for Plaintiffs-Appellants.

J. E. Vlastos, Vlastos & Duncan, Casper, Wyoming; John M. Majoras, Jones, Day, Reavis & Pogue, Cleveland, Ohio; and John I. Henley and John C. Brooks, Brooks, Henley & Drell, P.C., Casper, Wyoming, for Defendant-Appellee.

---

Before **BRORBY, HENRY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

Plaintiff Frontier Refining, Inc. ("Frontier") brought an action for equitable implied indemnity against Gorman-Rupp Co., Inc. ("Gorman-Rupp") in the United States District Court for the District of Wyoming. Frontier sought to recover approximately $19.25 million paid to settle personal injury claims made against Frontier and its affiliated companies after an explosion and fire at the Frontier Refinery in Cheyenne, Wyoming. Frontier appeals the district court's rulings allowing discovery, and receipt as trial evidence, of materials protected by the attorney-client privilege and work product doctrine. It also appeals the district court's ruling which allowed joinder of Frontier's liability insurers as real parties in interest. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we REVERSE and REMAND.

# II. FACTS

Frontier operates a refinery in Cheyenne, Wyoming. In 1992, the refinery had a "slop system" to recover oil for recycling into crude tanks for future use. The slop system included two storage tanks, designated as Tank S5 and Tank S6. The slop system also included two centrifugal pumps, designated as Pumps 160-A and 160-B, manufactured by Gorman-Rupp. A fire originated in the refinery's

slop system on June 8, 1992, causing extensive damage to the cast iron casing of pump 160-B.

The fire severely burned four contractors who were working in the area of the slop system. Three of the victims, Robin Torres, Merv Vowles, and Kee Elsisie, filed lawsuits against Frontier. Frontier and its liability insurers settled the Torres claim for $8.25 million, the Vowles claim for $6.75 million, and the Elsisie claim for $3.50 million. Frontier and its liability insurers also settled the claim of the fourth contractor, Sheldon Eike, for the sum of $750,000. Holland & Hart, and particularly attorney Joe Teig, represented Frontier in the defense of these claims.

Following settlement of the claims, Frontier filed this lawsuit seeking indemnification from Gorman-Rupp. Frontier obtained different counsel to prosecute the indemnity action. During the course of discovery, Gorman-Rupp filed a Motion to Compel Disclosure of the files of Frontier's counsel for the underlying claims. The district court granted the motion, ordering the production of Holland & Hart's files and the deposition of attorney Teig. The district court ruled that Frontier had waived the attorney-client privilege by filing a suit for equitable implied indemnity and that the work product doctrine did not apply.

Holland & Hart and Mr. Teig subsequently filed a motion for a protective order on their own behalf, arguing that the attorney-client privilege and work

-4-

product doctrine shielded their files from discovery. The magistrate judge denied the motion and ordered that the files be produced.[1] Holland & Hart attempted to appeal the Magistrate's Order on the first day of trial, but the district court refused to hear its appeal.

The case proceeded to trial before a jury. As some of the allegedly protected and privileged materials began to come into evidence, the court became concerned that it had erred in its previous rulings.[2] Accordingly, the district

---

[1]The magistrate judge based his decision on the following: "[S]aid documents directly or indirectly relate to the issue of the plaintiff's decision to engage in and settle the underlying disputes, and are reasonably calculated to lead to the discovery of admissible evidence under Federal Rule of Civil Procedure 26." The only documents the magistrate withheld from production were those which "did not directly or indirectly relate to the settlement in any way, or did not contain any useful information."

[2]The court stated:

Gentlemen, the reason I called you to chambers right now is that since the hearing after lunch on Monday, I've been convinced that I was wrong in denying Holland & Hart their opportunity to appeal the Magistrate's ruling with regard to their files.
Since then disclosures have been made in the course of the evidence in this trial, particularly the exhibit board that was admitted into evidence this morning with the Holland & Hart logo on it, convinces me that I was absolutely wrong because I think that there's a good basis for the Holland & Hart appeal.
And I don't know what our Magistrate was doing, but I never would have allowed discovery of something like that. I don't think it should have been. I think the Magistrate may have gone entirely too far.
. . . .
It strikes me that the hearing of an appeal of this nature at this point after the disclosure has already been made and the Holland &

-5-

court scheduled a hearing before another district judge to hear Holland & Hart's appeal of the magistrate's Order.[3] (Hearing Transcript of December 8, 1995, pp. 1-92). The district court affirmed in part and reversed in part the magistrate's Order, limiting waiver to documents existing on and testimony relating to dates prior to the settlement of the underlying claims.[4] The trial proceeded and

Hart file has been photocopied could be a process in unringing a bell, but nonetheless, there also could be some documents that they would not want public. . . .

. . . .

And I think that that is making Holland & Hart's work product work against them and I think that's just plain wrong.

So I think that it's necessary for Holland & Hart to have this hearing now.

[3]The district judge presiding over this case has a relative who was then an attorney with Holland & Hart. Evidently, he did not hear the Holland & Hart appeal due to this relationship.

[4]Gorman-Rupp was allowed to introduce the following exhibits at trial:

1.      BBBI (Letter dated October 9, 1992 from attorney Joe Teig of Holland & Hart to Douglas Beck, Corporate Director of Frontier Refining Inc.'s parent corporation, Wainoco Oil Corporation, regarding investigation, liability analysis, damage analysis, opposing counsel, judge assignment, and litigation strategies);

2.      BBB2 (Letter dated December 11, 1992 from attorney W.T. Womble, co-counsel for Frontier, to attorney Cliff Hall, counsel for Frontier's insurers, regarding settlement);

3.      BBB9 (Memorandum dated September 29, 1992 of M.E. King of Holland & Hart regarding case investigation);

Gorman-Rupp continued to use Holland & Hart file materials in its case. It also called attorney Joe Teig as an adverse witness.

The case was submitted to the jury on claims of product liability, misrepresentation, and negligence. The jury returned a verdict for the defense on all claims. The court entered judgment in favor of Gorman-Rupp on the verdict. Frontier filed a Motion for New Trial, which the court denied. This appeal followed.

III. ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

*1. Standard of Review*

Frontier contends the district court erred in concluding that Frontier waived the protections of the attorney-client privilege and work product doctrine when it brought an indemnity action against Gorman-Rupp. This court has previously

---

4. BBB13 (Summary of findings of a public opinion poll concerning the fire and explosion, prepared on behalf of Holland & Hart);

5. BBB16 (Letter dated August 13, 1992 from attorney Brad Cave of Holland & Hart to Lorna Bullene, Frontier Refining Inc., Risk Management Coordinator, regarding investigation);

6. CCC Series of Exhibits (two-feet by four-feet enlargements of summaries prepared by Holland & Hart detailing strengths and weaknesses in the underlying litigation).

held that we will not reverse a trial court's order denying discovery absent an abuse of discretion. *See Motley v. Marathon Oil Co.* 71 F.3d 1547, 1550 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 1678 (1996). Although this case involves an order compelling discovery rather than denying it, we see no meaningful distinction between the two in articulating a standard of review.[5] Thus, we review the district court's determinations regarding waiver of attorney-client privilege and work product protection for abuse of discretion. In this context, however, we review the court's underlying factual determinations for clear error and review *de novo* purely legal questions. *See United States v. Anderson (In re Grand Jury Subpoenas)*, 906 F.2d 1485, 1488 (10th Cir. 1990).

*2. Attorney-Client Privilege*

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases. Wyoming law thus controls this issue.[6] *See Wylie v. Marley Co.*, 891 F.2d 1463, 1471 (10th Cir. 1989).

---

[5]*But see Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) (noting that whether party has waived attorney-client privilege is mixed question of law and fact which is reviewed *de novo*).

[6]Wyoming has codified its attorney-client privilege. Wyo. Stat. Ann. § 1-12-101(a)(i) provides:

The following persons shall not testify in certain respects:
An attorney or a physician concerning a communication made to him by his client or patient in that relation, or his advice to his client or patient. The attorney or physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies

Courts generally employ some version of one of the three following general approaches to determine whether a litigant has waived the attorney-client privilege. The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. *See Independent Prods. Corp. v. Loew's Inc.*, 22 F.R.D. 266, 276-77 (S.D.N.Y. 1958) (originating "automatic waiver" rule); *see also FDIC v. Wise*, 139 F.R.D. 168, 170-71 (D. Colo. 1991) (discussing *Independent Productions* and "automatic waiver" rule). The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1266-68 (D.C. Cir. 1981) (balancing need for discovery with importance of privilege), *vacated without opinion*, 458 U.S. 1118 (1982); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (setting forth three-factor test, which includes relevance and vitality prongs). Finally, several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the

the attorney or physician may be compelled to testify on the same subject.

-9-

litigation. *See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co*, 32 F.3d 851, 863-64 (3d Cir. 1994) (adopting restrictive test and criticizing more liberal views of waiver).

The district court here adopted the intermediate test set out in *Hearn* to analyze whether Frontier had waived its attorney-client privilege in bringing this indemnity action against Gorman-Rupp. This court reviews *de novo* the district court's determination of state law. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

Frontier contends that the Wyoming Supreme Court has adopted the most restrictive view of waiver: the bringing of an indemnity suit does not impliedly waive the attorney-client privilege unless the plaintiff asserts reliance on the advice of counsel to prove the reasonableness of the underlying settlement. Frontier cites *Oil, Chemical & Atomic Workers International Union (OCAW) v. Sinclair Oil Corp.*, 748 P.2d 283 (Wyo. 1987), in support of its argument.

*Sinclair* involved a union decertification election in which a letter critical of the union and its officers was circulated among Sinclair employees. The union lost the election and thereafter brought an action for libel and civil conspiracy against officers and representatives of Sinclair. *See id*. at 287. During the course of discovery, Sinclair asserted attorney-client privilege in response to nearly all questions eliciting communications made in the presence of Sinclair's attorney.

*See id*. at 289. The union argued that Sinclair had waived the attorney-client privilege by pleading the absence of malice as an affirmative defense and by asserting that the decision to circulate the letter had been made with the advice of counsel. *See id.* at 290. The Wyoming Supreme Court concluded that malice was an element of the *plaintiff's* case and thus "became an issue when [plaintiff's] filed their complaint." *Id.*[7] Directing its attention to reliance on the advice of counsel, the court noted:

> We recognize that reliance upon a defense of advice of counsel has, in some circumstances, been held to constitute a waiver of the attorney-client privilege. In this case, however, appellees did not rely on advice of counsel as a defense. They merely stated, in response to questions posed by appellants' counsel, that [their counsel] participated in the decision to publish the . . . letter and helped prepare a cover letter for it.

*Id.* (citations omitted). The court concluded that under those facts, no waiver had occurred. *See id.*

Frontier argues *Sinclair* stands for the proposition that a party must allege reliance on the advice of counsel before a court may find an implied waiver of the attorney-client privilege. The *Sinclair* court, however, did not so hold. Instead, it merely noted that an allegation of such reliance was one way in which waiver

---

[7]Although Sinclair pleaded lack of malice as one of its affirmative defenses, the plaintiff had already raised the issue in its complaint; therefore, malice did not become an issue as a result of Sinclair's "affirmative acts." *Oil, Chem. & Atomic Workers Int'l Union (OCAW) v. Sinclair*, 748 P.2d 283, 290 (Wyo. 1987).

could occur. Because the Wyoming Supreme Court has not directly announced a definitive test for waiver of attorney-client privilege, we must predict how that court would resolve this issue. In doing so, we may look to "other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns v. International Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991).

In ruling on Gorman-Rupp's Motion to Compel Disclosure, the district court declined to adopt the "automatic waiver" rule because, according to the court, it has been roundly criticized in the circuits, does not adequately account for the importance of the attorney-client privilege to the adversary system, and is more applicable to constitutional, rather than attorney-client, privileges. We find the district court's analysis convincing and agree that Wyoming would not adopt the "automatic waiver" rule. *Cf. Greater Newburyport Clamshell Alliance v. Public Serv. Co.*, 838 F.2d 13, 20 (1st Cir. 1988) (criticizing "automatic waiver" rule); *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1205 (Fed. Cir. 1987) (same); *see also Arnold v. Mountain W. Farm Bureau Mut. Ins. Co.*, 707 P.2d 161, 165 (Wyo. 1985) ("[T]he preservation of the attorney-client privilege is essential to the operation of our judicial process.").

Having concluded that Wyoming would not adopt the "automatic waiver" rule, this court need not choose between the remaining two general approaches

because Gorman-Rupp failed to demonstrate its entitlement to the privileged materials under the more liberal of the two approaches to waiver. In its analysis of this issue, the district court adopted the intermediate approach and applied the widely cited case *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). Under the *Hearn* test, each of the following three conditions must exist to find waiver:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; *and* (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.

*Id.* at 581 (emphasis added). An analysis of the nature of the claims in this case in light of the availability of other sources for evidence establish that the third condition for waiver of the privilege was not and could not be established.

In an action for equitable implied indemnity under Wyoming law, the party seeking indemnity must prove that the settlement was reasonable and "made in good faith to discharge a potential or actual liability." *Schneider Nat'l, Inc. v. Holland Hitch Co.*, 843 P.2d 561, 579 (Wyo. 1992); *see also Pan Am. Petroleum Corp. v. Maddux Well Serv.*, 586 P.2d 1220, 1225 (Wyo. 1978). If the indemnitor was not adjudged liable in the underlying action, the party seeking indemnity must prove that the wrongful conduct of the indemnitor created the claim against the indemnitee. *See Schnieder*, 843 P.2d at 580. To recover on its indemnity claim, Frontier therefore had to prove that Gorman-Rupp's pump caused the fire

-13-

and explosion which created claims against Frontier and that the settlements were reasonable and made in good faith to discharge its actual or potential liability to the burn victims.

Gorman-Rupp contends that it is entitled to "information and communications relating to the settlement agreements and relating to the rationale" for the decision by Frontier and its insurers to settle the underlying claims.[8]  Appellee's Brief at 20.  The district court agreed, ruling that "information and communications relating to the settlement agreements are relevant to this case.  Advice given by Frontier Refining's counsel in the underlying suits is relevant to determine whether the settlement agreements were reasonable."  Order Granting Motion to Compel Discovery at 6.  Without conducting any analysis of whether the information was accessible elsewhere, the court opined that "applying the privilege here would deny Gorman-Rupp access to information that is necessary to its defense.  Gorman-Rupp is entitled to production of information relating to the settlement agreements so that it may challenge their reasonableness."  *Id.*

---

[8]Specifically, Gorman-Rupp requested the "claims files, underwriting files, and all other files pertaining to the underlying cases."  Appellant App. at 49.  Gorman-Rupp also requested that Frontier's former attorney, Joe Teig, be compelled to answer deposition questions relating to the settlement of the underlying cases.  *Id.*  Gorman-Rupp argued that the Holland & Hart files "may be at issue in this case."  *Id.* at 57.

The court hinged its conclusion that the information was "necessary" to its conclusion that the information was "relevant." Mere relevance, however, is not the standard articulated in *Hearn*. Instead, the information must also be "vital," which necessarily implies the information is available from no other source. *Hearn*, 68 F.R.D. at 581; *see Greater Newburyport Clamshell Alliance*, 838 F.2d at 20.

In this case, Gorman-Rupp had access to information regarding the reasonableness of the settlement and Frontier's motivations for settling through witnesses other than Frontier's attorneys. For example, Richard Barrett, an attorney for two of the burn victims, testified that his clients' claims were based solely on Frontier's negligence and human error and that neither the victims nor Mr. Teig had made any allegations against Gorman-Rupp in the underlying suits. Mr. Barrett further disclosed Mr. Teig's admission that Frontier had no defense to the negligence claims. Other expert witnesses testified about the likely reasons for settlement and risks of exposure. In addition, Gorman-Rupp was free to inquire of other Frontier employees or representatives to discern Frontier's reasons for settling. Such information was not within the exclusive possession of Frontier's attorneys and was not necessarily protected by the privilege. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415-16 (D. Del. 1992) (noting company officials' knowledge of facts and their decision to seek

-15-

coverage are subject to discovery but also noting a court cannot justify compelling production of privileged documents solely as means of checking indemnitee's statements). As a consequence, the privileged and protected information at issue was not truly "vital" to Gorman-Rupp's defense. The trial court's ruling to the contrary, being based on an error of law regarding the meaning of "vital," was therefore an abuse of discretion.[9]

## 3. Work Product Doctrine

The district court concluded that the work product doctrine did not apply to this case. Citing *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 579 N.E.2d 322, 331 (Ill. 1991), the court found that Frontier

---

[9]We further note that Gorman-Rupp has candidly admitted on appeal that

> [t]here is nothing contained in [the privileged] material which could allow the jury to engage in any meaningful analysis of whether or not the Gorman-Rupp pump was negligently manufactured, designed or distributed, or whether the pump was defective. Furthermore, the jury could not in any way determine whether there was any misrepresentation made by Gorman-Rupp regarding the pumps in that evidence.

Appellee Br. at 33. This court has reviewed the materials in question and agrees that, without regard to whether the admission of the evidence was prejudicial, no jury could **legitimately** rely on the privileged evidence to conclude that Gorman-Rupp's pump was or was not the cause of the explosion. *Cf. infra* Part IV of this opinion (concluding that the admission into evidence of the improperly discovered materials adversely affected Frontier's substantial rights). In light of Gorman-Rupp's admission and our review, we conclude that the district court need not reconsider the privilege and discovery issues on remand for a new trial.

prepared the material Gorman-Rupp sought "in anticipation of the underlying litigation, not in anticipation of the present litigation." Order Granting Motion to Compel Discovery at 7. It therefore concluded the work product protection had ended. The district court further ruled that Frontier could not claim work product protection because it had placed the material at issue by filing suit for indemnity. The district court stated that the protection of Federal Rule of Civil Procedure 26(b)(3) does not apply when the information sought is "directly at issue and it would be unfair to deny the discovering party access to the information." *Id.* at 7-8. According to the district court, "[t]he work product doctrine serves as a shield, not as a sword." *Id.* at 8 (citing *Waste Management*, 579 N.E.2d at 331).

That part of the district court ruling which failed to extend work product protection merely because the relevant materials were prepared in anticipation of other, albeit related litigation, is against the great weight of well-reasoned authority. A consideration of the Rule 26(b)(3) requirements of substantial need and undue hardship do not support that part of the district court ruling which denied protection on the grounds that the filing of this lawsuit placed the materials at issue. Consequently, the district court abused its discretion in failing to extend the work product protection of Rule 26(b)(3) to the Teig and Holland & Hart materials.

The appropriate starting point is obviously Rule 26(b)(3)[10] which provides:

> [A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The Supreme Court has recognized in dicta[11] that "the literal language of [Rule 26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983). According to the Supreme Court's dicta, Rule 26's

---

[10]"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).

[11]In *Grolier*, the Supreme Court held that under the work product doctrine contained in Exemption 5 of the Freedom of Information Act, "attorney work product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983); *See also* 5 U.S.C. § 552(b)(5) (exempting from mandatory public disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency"). In reaching this decision, the Court stated that it was "not rely[ing] exclusively on any particular construction of Rule 26(b)(3)," but was instead independently relying on the statutory language of exemption 5. *Grolier*, 462 U.S. at 26.

language does not indicate that the work product protection is confined to materials specifically prepared for the litigation in which it is sought. Work product remains protected even after the termination of the litigation for which it was prepared. *See id*. The language from *Grolier* set out above, although dicta, provides a particularly strong indication that Rule 26(b)(3) applies to subsequent litigation. *See Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.) (stating that "this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"), *cert. denied*, 116 S. Ct. 1830 (1996).

In addition to the compelling Supreme Court dicta, it appears every circuit to address the issue has concluded that, at least to some degree, the work product doctrine does extend to subsequent litigation. At least one circuit, the Third, has suggested that the doctrine should only apply to closely related subsequent litigation, although it has declined to expressly so hold. *See In re Grand Jury Proceedings*, 604 F.2d 798, 803-04 (3d Cir. 1979). At least two additional circuits, the Fourth and Eighth, extend the privilege to all subsequent litigation, related or not. *See United States v. Pfizer, Inc. (In re Murphy)*, 560 F.2d 326, 335 (8th Cir. 1977); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484-85 & n.15 (4th Cir. 1973). Finally, at least three circuits, the Second, Fifth, and Sixth, have recognized that the work product doctrine extends to

-19-

subsequent litigation, but have either declined to decide or have failed to discuss whether the doctrine extends only to subsequent litigation which is "closely related" to the underlying proceedings. *See In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994) (explicitly recognizing two approaches and refusing to choose between the two); *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir. 1976) (no discussion of issue in appeal where subsequent litigation is closely related to underlying litigation); *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 557 (2d Cir. 1967) (same).

Based on the compelling dicta in *Grolier* and the reasoning set out in the circuit court opinions cited above, we conclude that the work product doctrine extends to subsequent litigation. This court need not, however, determine whether the subsequent litigation must be closely related because this indemnity action is unquestionably "closely related" to the underlying suit between Frontier and the injured contractors. *See In re Grand Jury Proceedings*, 43 F.3d at 971 (refusing to choose between two approaches where more rigorous "closely related" test was met). Because the work product doctrine does indeed extend to subsequent litigation, we must move on to consider the alternative grounds of the district court's discovery order.

Rule 26(b)(3) prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the

discovering party is unable to obtain the substantial equivalent of the material by

other means without undue hardship.[12]  *See* Fed. R. Civ. P. 26(b)(3) (codifying

work product doctrine first recognized by Supreme Court in *Hickman v. Taylor*,

329 U.S. 495, 511-12 (1947)); *see also* Moore's Federal Practice § 26.70[5][b]

(Daniel R. Coquillette et al. eds., 3d ed. 1997).  This doctrine encourages

attorneys to prepare thoroughly for trial without fear that their thoughts and

---

[12]The courts have generally recognized a difference between fact work product and opinion work product.  *See generally* 6 Moore's Federal Practice § 26.70[5][b], [e] (Daniel R. Coquillette et al. eds., 3d ed. 1997).  The substantial need/undue burden test applies only to fact work product.  *Id.* § 26.70[5][b].  The circuits are divided on whether there is absolute protection for opinion work product.  Some courts have held that opinion work product is absolutely protected; others have concluded it may be discovered under compelling circumstances.  *Compare Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (holding opinion work product may be discovered when mental impressions are at issue and need for material is compelling), *and In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982) (requiring showing of extraordinary justification to overcome protection of opinion work product), *with Duplan Corp. v. Moulinage de Retorderie et Chavanoz*, 509 F.2d 730, 735 (4th Cir. 1974) (holding opinion work product to be absolutely protected).  The Supreme Court has not yet decided whether opinion work product is absolutely immune from discovery.  *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981) (declining to decide whether any showing of necessity can overcome opinion work product protection but stating that showing of substantial need and inability to obtain information without undue hardship is insufficient to compel disclosure).  As set out more fully in the text above, we conclude that the district court erred in ordering production of the fact work product without applying the substantial need/undue burden test.  If the less rigorous standard for fact work product was not met, neither of the possible opinion work product standards could be met.

efforts will be disclosed to an opponent. *See Hickman*, 329 U.S. at 516 (Jackson, J., concurring).

Although the district court recognized the substantial need/undue burden test as controlling the issue of waiver of work product protection, it declined to apply that test because it concluded Frontier had otherwise waived the protection when it "placed this material at issue by filing suit for indemnity." Order Granting Motion to Compel Discovery at 7. This conclusion is faulty as a matter of law and thus constitutes an abuse of discretion. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (holding abuse of discretion is established if district court decision was based on an error of law).

As the district court correctly suggested, a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion. *See* Moore's, *supra*, § 26.70[6][c]; *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989). Frontier, however, did not use any work product as a sword merely by filing a suit for equitable indemnification; nor did it thereby automatically waive work product protection or place work product in issue. The record on appeal reveals Frontier did not rely on the work product in any manner to justify its right to recovery or to respond to Gorman-Rupp's defense that the

-22-

initial settlements were not reasonable. Contrary to the conclusion of the district court, Frontier did not use the work product as a sword and is not, therefore, prohibited from shielding the material from discovery.

Furthermore, for many of the same reasons that preserved the attorney-client privilege, namely that information regarding the reasons for and reasonableness of the settlement was available elsewhere, Gorman-Rupp failed to establish a substantial need for the work product and undue burden if the protected materials were not disclosed. Accordingly, the district court erred in allowing discovery of the Holland & Hart materials and ordering that Teig submit to deposition.[13]

Gorman-Rupp argues for the first time on appeal that the work product doctrine does not apply because the materials at issue were prepared for the mutual benefit of Frontier and Gorman-Rupp against the contractors, the plaintiffs in the underlying litigation. In support of this argument, Gorman-Rupp relies on a novel twist to the "common interest" doctrine. That doctrine normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of

---

[13]For the same reasons set out earlier in this opinion, we conclude that the district court need not revisit this issue on remand for a new trial. *See supra*, footnote 9 (discussing Gorman-Rupp's admission that none of the discovered material could be legitimately used by the jury to decide the issues in this case).

interest with the represented party.  *See NL Indus., Inc. v. Commercial Union Ins. Co. v. Certain Underwriters at Lloyd's*, 144 F.R.D. 225, 230-31 (D. N.J. 1992). Citing a case from Illinois, Gorman-Rupp argues that the "common interest" doctrine can also act as a sword to overcome the work product doctrine.  *See Waste Management*, 579 N.E.2d at 327-29.

Even assuming that the "common interest" doctrine applies in the work product context, the doctrine does not apply to the instant case.  A growing majority of courts appear to reject the applicability of the doctrine unless the current adversaries were actually represented by the same attorney in the prior litigation.  *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 417-18 (D. Del. 1992) (collecting cases).  This court, however, need not decide the issue. Even absent the requirement of actual joint representation, Gorman-Rupp and Frontier did not share a community of interest.  Although Gorman-Rupp and Frontier may have shared an interest in minimizing the amount of the settlement in the underlying lawsuits, they did not at any time share an interest in identifying the cause of the fire or Frontier's response to the accident.  *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-31 (D.N.J. 1992) ("A community of interest exists where "different persons or entities 'have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . .  The key

consideration is that the nature of the interest be identical, not similar." (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)). Under these circumstances, this court cannot conclude that Frontier and Gorman-Rupp shared a community of interest or that Frontier ever intended to share protected materials with Gorman-Rupp.

## IV. PREJUDICIAL ERROR

Although the district court erred in allowing discovery and use at trial of materials and testimony protected by the attorney-client privilege and work product doctrine, such error requires reversal only if it affected the substantial rights of the parties. *See U.S. Indus. v. Touche Ross & Co.*, 854 F.2d 1223, 1252-53 (10th Cir. 1988); 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Evid. 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

Gorman-Rupp argues that admission of the Teig testimony and Holland & Hart evidence was harmless because "[t]here is nothing contained in that material which could allow the jury to engage in any meaningful analysis of whether or not

the Gorman-Rupp pump was negligently manufactured, designed or distributed, or whether the pump was defective." Appellee Br. at 33. It also argues that any error was harmless because virtually the same evidence was admitted through other witnesses.

Gorman-Rupp's first argument highlights precisely why the district court's error adversely affected Frontier's substantial rights. Although the Teig testimony and the Holland & Hart evidence may not have contained any admissible or truly meaningful evidence as to the manufacture, design, or distribution of the Gorman-Rupp pump, our close review of the record indicates there is a significant probability that the evidence may have unduly influenced the jury to conclude the cause of the accident was Frontier's negligence rather than the Gorman-Rupp pump. There is a significant risk that the jury resolved the causation issue on the basis of the Holland & Hart and Teig evidence rather than on the substantive evidence regarding the manufacture, design or distribution of the Gorman-Rupp pump. *Cf. Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1033-34 (10th Cir. 1995).

Although similar evidence may have been admitted through other witnesses, there is a qualitative difference between evidence received from Frontier's own attorneys and evidence received from other witnesses. There is too great a risk that a jury would accord significant or undue weight to the

testimony and admissions of a party's own lawyers. The district court itself recognized the harm in using the Holland & Hart files at trial:

> [D]isclosures that have been made in the course of the evidence in this trial, particularly the exhibit board that was admitted in evidence this morning with the Holland & Hart logo on it, convinces me I was absolutely wrong.
> . . . .
> I don't know what our Magistrate was doing, but I never would have allowed discovery of something like that. I don't think it should have been. I think the Magistrate may have gone entirely too far . . . .
> It strikes me that the hearing of an appeal of this nature at this point after the disclosure has already been made and the Holland & Hart file has been photocopied could be a process in unringing a bell . . . .
> And I think that that is making Holland & Hart's work product work against them and I think that's just plain wrong.

Although this court cannot describe the substance of the subject evidence without further compromising the privilege, our careful review of the record convinces us that the error in admitting the Teig testimony and Holland & Hart material was significant, harmful, and affected Frontier's substantial rights.


## V. JOINDER OF INSURANCE COMPANIES

In the proceedings below, Gorman-Rupp filed a Motion for Joinder of Real Parties in Interest. It requested joinder as real parties in interest of eleven insurance companies, which had underwritten liability insurance for Frontier. The motion was referred to a magistrate judge who granted Gorman-Rupp's motion.

Frontier did not appeal that ruling to the district court. Instead, it proceeded to trial and first raised the issue as error in its Motion for New Trial.

Frontier's failure to appeal the magistrate's ruling to the district court precludes it from raising the issue on appeal to this court. Rule 72(a) of the Federal Rules of Civil Procedure provides in relevant part:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; *a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.*

(Emphasis added.)

In *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1165 (10th Cir. 1986), this court held that a party waives its right to appeal a magistrate's order when it has not filed objections with the district court. In *Niehaus* we noted that by failing to file timely objections with the district court, the party "stripped the district court of its function of effectively reviewing the magistrate's order" and "frustrated the policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work." *Id.* These policies are particularly relevant in the instant case. Frontier proceeded through trial without objecting to the magistrate's order, thereby allowing significant judicial resources to be expended on a trial in which Frontier contends inappropriate parties were joined. The text of Rule 72 and precedent preclude Frontier from now raising an objection to the magistrate's ruling

allowing joinder.[14]  *See Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992); *Video Views, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980).

## VI.  CONCLUSION

We **REVERSE** the judgment and **REMAND** for a new trial consistent with this opinion.

---

[14]We express no opinion as to whether Frontier can raise the issue of joinder upon remand for a new trial.