**UNITED STATES of America, ex rel. [REDACTED], Plaintiffs,**

v.

**[REDACTED] Defendants.**

No. 2:97–CV–669 G.

United States District Court, D. Utah, Central Division.

April 23, 2001.

Robert D. McCallum, Jr., Assistant Attorney General Civil Division, Paul M. Warner, United States Attorney District of Utah, Michael F. Hertz, Steven D. Altman, Dee Lord, Sara McLean, Attorneys, Civil Division, United States Department of Justice and Eric A. Overby, Assistant United States Attorney, on behalf of United States.

By [ ], by Andrew H. Stone, Deno G. Himonas, and Edward R. Munson, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, James J. Graham, Jones, Day, Reavis & Pogue, Washington, DC, and Donald C. Holmes, Holmes, Schwartz & Gordon, Easton, MD, Attorneys, On behalf of [ ].

By Andrew H. Stone, Deno G. Himonas, and Edward R. Munson, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, by David J. Jordan, Stoel Rives LLP, Salt Lake City, UT, On behalf of individual Defendants, [ ] [ ] [ ].

By Patricia W. Christensen, Parr Waddoups Brown & Loveless, Salt Lake City, UT, On behalf of Relators, [ ] [ ] [ ] [ ] [ ], Attorney for Relators.

## ORDER ON DEFENDANTS' MOTION TO COMPEL*

J. THOMAS GREENE, District Judge.

This matter is before the court on defendant [ ] Motion to Compel. Defendants seek an order compelling the United States to produce five categories of documents, and compelling the plaintiff Relators to answer certain deposition questions regarding their meetings and discussions with the United States. The United States has filed two memoranda in opposition to defendants' motion. The court heard extensive oral argument and took the matter under advisement. The United States was represented by Dee Lord and Eric Overby, [ ] was represented by [ ], and [ ] was represented by [ ].

Now being fully advised, the court enters its Order on Motion to Compel.

### I. DISCLOSURE STATEMENTS

■ Defendants first seek to discover the disclosure statements made by the Relators to the government, which were prepared pursuant to the False Claims Act. *See* 31 U.S.C. § 3730(b)(2) (requiring that a Relator serve the government with a "written disclosure of substantially all material evidence and information [the Relator] possesses"). The United States has provided these materials to the defendants. Production of the Disclosure Statements therefore is no longer at issue, and defendants' motion to compel discovery of those materials is moot.

### II. DEPOSITION TESTIMONY REGARDING INFORMATION AND DOCUMENTS EXCHANGED BETWEEN THE GOVERNMENT AND THE RELATORS

Defendants next move to compel the Relators to respond to deposition questions regarding discussions between the Relators and government personnel.[1] The govern-

---

* The Stipulated Order granting publication of the redacted copy of this Court's prior Order on Defendants' Motion to Compel is attached as an addendum.

1. During [ ]'s deposition, defendants' counsel asked, "[y]esterday, Doctor, you described two conversations in which you participated with the other Relators, your counsel, Ms. Lord and other individuals; right? Let's take the first one then. What was said and by whom during that conversation?" ([ ] Depo. at 313–15, attached as Ex. F

to Defs.' Mem. in Supp. of Mot. to Compel.) Relators' counsel objected on the grounds that "the question calls for information that's privileged under attorney-client privilege, work product privilege, a number of other applicable privileges and it's protected by statute." (*Id.* at 315.) During the deposition, the government objected on the further grounds that the question sought "the disclosure of . . . information that was gathered by the United States in the course of this investigation" and stated that "there is absolutely

ment objects on the ground that the deposition questions seek answers that are protected by work product privilege.

### 1. Applicability of the Work Product Privilege to Oral Communications

■ The first issue is whether the discussions between the Relators and government officials are protected work product. The defendants assert that the discussions cannot be entitled to work product protections because only documents and tangible materials enjoy work-product privileges. (*See* Defs.' Mem. in Supp. of Mot. to Compel at 10.)[2]

The Restatement (Third) of the Law Governing Lawyers rejects [ ] position that only documents and tangible things may enjoy work-product immunity, stating that work-product consists not only of "tangible material" but also of "its intangible equivalent in unwritten or oral form." Restatement (Third) of the Law Governing Lawyers § 87. According to the Restatement, "Intangible work product is equivalent work product in unwritten, oral or remembered form. For example, intangible work product can come into question by a discovery request for a lawyer's recollection derived from oral communications." *Id.* cmt. (f).

The issue, then, is whether the government has adequately demonstrated that the subject matter discussed in its meetings with the Relators was "prepared by a lawyer for litigation then in progress or in reasonable anticipation of future litigation." Fed.R.Civ.P. 26(b)(3). Dee Lord, government counsel in this matter, described the purpose of the meetings in a declaration:

> During the course of the [government's] investigation [into the False Claim Act allegations], various representatives and agents of the United States met with the Relators and exchanged documents and other information, in furtherance of the investigation. [ ] To the best of my knowledge, all such contacts between representatives of the United States and Relators were made at the direction of, under the supervision of, and after consultation with, counsel for the United States.

(Lord Decl. Para. 5–6, attached to United States' Opp'n to Defs'. Mot. to Compel.) The question to which the government objects seeks to probe [ ] recollection of the substance of these meetings: "What was said and by whom during that conversation?" ([ ] Dep. at 315.)

It is manifest from Ms. Lord's declaration that the purpose of any meetings between government counsel and the Relators was preparation for this litigation. The substance of these discussions appear to contain intangible work product, as that term is used in the Restatement (Third) of the Law Governing Lawyers. As such, the questions

---

no relevance to any of the information that's being sought here in connection with this pending lawsuit." (*Id.* at 317.)

As discussed below, the government's memorandum in opposition to this motion to compel argues that defendants may not ask [ ] about the meetings between the Relators and government officials because the question seeks to "reveal the thoughts and plans of government attorneys and investigators...." (United States' Opp'n to Defs.' Mot. to Compel at 12.) It appears, therefore, that the government opposes defendants' request primarily or only on the theory that the question seeks an answer that is protected work product. In any event, because the Court denies the defendants' motion to compel these documents (as discussed below), the government's other theories in opposition to defendants' request are largely academic. As such, this section focuses on the government's work product privilege argument.

**2.** In support of their argument, defendants cite only a recent unpublished District of Kansas case, in which the court stated that "the work-product doctrine applies to the discovery of documents and tangible things and not to non-documentary discovery such as facts elicited in interrogatories and deposition testimony." *Fields v. Atchison, Topeka & Santa Fe Railway Co.*, No. 95–4026–GTV (D.Kans. Sept. 30, 1996), *reconsideration granted in part, denied in part,* 1997 U.S. Dist. LEXIS 22928 (D.Kans. Aug. 27, 1997). The 1997 Kansas District Court decision does not appear to support defendants' proposition:

> Defendant Santa Fe made no attempt to identify the specific documents withheld or to provide any factual basis for a claim of attorney-client privilege or work product immunity. The documents which defendant claims are responsive to this request *may have been entitled to protection as attorney-client communications or attorney work product,* however, any such privilege or protection has been waived. 1997 U.S.Dist. LEXIS 22928, *7 (emphasis added).

posed by defense counsel during [ ] deposition seek answers which are protected by the work product privilege.

## 2. Waiver

■ Assuming that [ ] recollection of the meetings contains protected work product, defendants argue that the government waived that protection when it shared its thoughts and impressions with the Relators during the meetings between the Relators and the government officials. The government contends that its disclosure to the Relators did not waive work product protection pursuant to the common interest doctrine.

■ As a general rule, disclosure of work product confidences to third parties waives the protection. *See In re Sealed Case,* 29 F.3d 715, 719 (D.C.Cir.1994). The common interest doctrine, however, "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a *community of interest* with the represented party." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 705 (10th Cir.1998) (emphasis added).

■ "A community of interest exists where different persons or entities 'have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice'.... The key consideration is that the nature of the interest be *identical, not similar ....*" *NL Indus. Inc. v. Commercial Union Ins. Co.,* 144 F.R.D. 225, 230–31 (D.N.J.1992) (internal citations omitted) (emphasis added) (cited in *Frontier Refining, Inc.,* 136 F.3d at 705). In a qui tam action, like the instant case, the government and the

Relators have a predominantly common interest in the proceeding. *See United States v. Schimmels,* 127 F.3d 875, 882 (9th Cir. 1997) (describing the relationship between Relators and the United States as a "unity of interest"); *United States ex rel. Fallon v. Accudyne Corp.,* No. 93–C–801–A at 1 (W.D.Wis. Mar. 2, 1995) (unpublished Memorandum and Order denying motion to compel) ("[S]ince the interests of Relators and the United States are inherently aligned, it seems clear they should be so treated."). As the government puts it, "The Relators and the United States are co-plaintiffs, allied in their interest in this litigation in identifying [ ] false claims, proving them, obtaining statutory redress in the form of damages, and distributing the proceeds of this suit." (United States' Mem. in Opp'n to Defs.' Mot. to Compel at 7.) At this point of the litigation, the United States and the Relators share a community of interest sufficient to satisfy the common interest doctrine.[3]

Based on the foregoing, defendants' motion to compel deposition answers is DENIED.

## III. DOCUMENTS GOVERNMENT HAS PRODUCED OR SHOWN TO RELATORS

■ Defendants next seek an order compelling the United States to identify all the documents it has given or shown to the Relators.[4] More specifically, the defendants contend that they are entitled to "know what specific documents have been shown to Relators and for what purpose. If the Government has shown the Relators documents to refresh their recollections, defendants are entitled to know that, as well as what documents Relators needed to see to have their recollections refreshed." (Reply Mem. in Supp. of Mot. to Compel at 11.) The United

---

3. This is not to say, however, that the Relators and the United States will always share this community of interest. At least one court has noted, in a different context, that the interests of the government and Relators may diverge "when it comes time to pay the relator's share [of damages]." *United States ex rel. Thornton v. Science Applications Int'l Corp.,* 207 F.3d 769, 773 (5th Cir.2000); *see also Searcy v. Philips Electronics North America Corp.,* 117 F.3d 154, 160 (5th Cir.1997) (noting that the government may object to a settlement if it appears that the Relators

manipulated the settlement in order to "unfairly enrich them and reduce benefits to the government").

4. [ ] is already in possession of all of the documents produced by the government, including documents the government showed the Relators. At issue is only whether the government must identify the specific documents shown to Relators and state the purpose for which such documents were shown.

States opposes on the ground that the identification of which documents were given to or shown to the Relators is protected work product. According to the United States, production of the requested documents would reveal "which documents the attorneys and their investigators deemed relevant to their investigation." (United States' Opp'n to Defs.' Mot. to Compel at 12.)

[ ] has all of the materials given to or shown to the Relators during the meetings between the Relators and government attorneys. The Court considers that to be sufficient disclosure. Moreover, such documents constitute protected work product. Accordingly, defendants' motion to compel concerning documents produced or shown to Relators is DENIED.

### [REDACTED]

### 1. The Work Product Privilege

 In general, materials are not discoverable under the doctrine of attorney work product if such were prepared in anticipation of litigation. *See* Fed.R.Civ.P. 26(b)(3); *see also McEwen v. Digitran Sys., Inc.,* 155 F.R.D. 678, 683 (D.Utah 1994); Restatement (Third) of the Law Governing Lawyers §§ 87, 88 (defining ordinary work product). The Supreme Court has recognized in dicta that "the literal language of [Rule 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). If it appears that materials were prepared for mixed purposes, the privilege is available only if "the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation...." *McEwen,* 155 F.R.D. at 683 (quoting *United States v. Gulf Oil Corp.,* 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985)).

### [REDACTED]

 The [ ] materials at issue here were prepared at the direction and under the supervision of the attorneys investigating the *qui tam* allegations in this suit, pursuant to the False Claims Act, 31 U.S.C. § 3730(a).

Therefore, the materials are protected by the work product doctrine unless there is some exception to the rule applicable to this case.

### 2. Waiver of the Work Product Privilege

 Defendants next argue that the government waived its work product protection with respect to the [ ] materials. A party may waive work product protections if it takes actions that are inconsistent with the privilege, such as disclosure in an attempt to gain a strategic advantage in litigation. *See, e.g., United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (finding that a party had, "by electing to present the investigator as a witness, waived the [attorney-client] privilege with respect to matters covered in his testimony"); *Frontier Refining, Inc.,* 136 F.3d at 704 ("a litigant cannot use the work product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion"); *see also* Restatement (Third) of the Law Governing Lawyers § 91 (waiver by some voluntary act); *id.* § 92 (waiver by use of work product in litigation). In addition, partial disclosure of protected work product may waive work product protection of all related work product materials. *See In re Sealed Case,* 676 F.2d at 818 (holding that partial disclosure of privileged material waives the privilege as to all other communications on the same subject); *In re Commercial Fin. Servs., Inc.,* 247 B.R. 828, 848 (Bankr. N.D.Okla.2000) ("Subject matter waiver is narrowly construed [and] applies only where partial waiver confers a tactical advantage.").[7] [REDACTED]

### [REDACTED]

 Since the United States did not make affirmative use of the [ ] as a sword [ ], it did not impliedly waive its work product protections [ ]. *See Frontier Refining,* 136 F.3d at 704 ("Frontier, however, did not use any work product as a sword merely by filing a suit for equitable indemnification; nor did it automatically waive work product protection or place work product in issue. Frontier

did not use the work product as a sword and is not, therefore, prohibited from shielding the material from discovery.").

[REDACTED]

### 4. *Brady* Analysis

The defendants next argue that even if the [ ] materials are protected work product and the government has not waived that protection, the government nonetheless has an obligation to turn over those materials pursuant to the rule articulated in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the United States Supreme Court held that the government is obligated by the Due Process Clause of the United States Constitution to turn over all potentially exculpatory information in criminal proceedings: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194.

 Defendants urge this court to extend the *Brady* principle to this civil action. Defendants' argument raises two issues: first, whether the *Brady* principle can overcome work product protections and second, whether the *Brady* principle applies in this civil context. The Supreme Court has not decided whether *Brady* requires a prosecutor to turn over work product in a civil case. *See Goldberg v. United States,* 425 U.S. 94, 98 n. 3, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (leaving open this question). Several courts and commentators, however, have assumed that *Brady* requires disclosure despite work product protections because *Brady* contemplates a constitutional rather than a statutory right. *See, e.g., Mincey v. Head,* 206 F.3d 1106, 1133 n. 63 (11th Cir.2000) (listing cases and commentators). The Court agrees with this line of cases and holds that the *Brady* principle, if it applies in this civil case, overcomes work product protections.

 In support of the argument that the *Brady* principle applies to this civil case, defense counsel cites three cases that appear to endorse the use of the *Brady* principle in civil contexts. *See Demjanjuk v. Petrovsky,* 10 F.3d 338, 354 (6th Cir.1993), *cert. denied,* 513 U.S. 914, 115 S.Ct. 295, 130 L.Ed.2d 205 (1994) (concluding that *Brady* applied in denaturalization and extradition cases based on proof of alleged criminal activities of the party proceeded against); *Sperry & Hutchinson Co. v. FTC,* 256 F.Supp. 136, 142 (S.D.N.Y.1966) ("Presumably the essentials of due process at the administrative level require similar [*Brady* ] disclosures by the agency where consistent with the public interest. In civil actions, also, the ultimate objective is not that the Government 'shall win a case, but that justice shall be done.' ") (in dicta); *EEOC v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373, 1383 n. 5 (D.N.M.1974) ("*Brady* [ ] orders that exculpatory information must be furnished a defendant in a criminal case. A defendant in a civil case brought by the Government should be afforded no less due process of law.").

The government cites several cases that have concluded, in the context of administrative hearings, that *Brady* is limited to criminal, not civil, matters. *See, e.g., Tandon v. Commissioner,* 2000 WL 331926 (6th Cir. Mar. 23, 2000) (rejecting application of *Brady* to a civil tax case involving allegations of fax fraud); *NLRB v. Nueva Engineering, Inc.,* 761 F.2d 961 (4th Cir.1985) (rejecting application of Brady to a National Labor Relations Board proceeding); *Mister Discount Stockbrokers, Inc. v. SEC,* 768 F.2d 875 (7th Cir.1985) (rejecting application of *Brady* to a securities administrative disciplinary proceeding).

In *Demjanjuk,* the Sixth Circuit concluded that *Brady* applied in a denaturalization and extradition case. In reaching this conclusion, the Court noted the following:

> The consequences of denaturalization and extradition equal or exceed those of most criminal convictions. In this case, Demjanjuk was extradited for trial on a charge that carried the death penalty. OSI is part of the Criminal Division of the Department of Justice. The OSI attorneys team with local United States Attorneys in seeking denaturalization and extradition, and they approach these cases as prosecutions.

10 F.3d at 354. In a later case, the Sixth Circuit limited the *Demjanjuk* decision:

> This seemingly broad language [in *Demjanjuk*] must be read in the context of a case that involved an unusual set of circumstances. Specifically, in *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort.

*In the Matter of the Extradition of Michael John Drayer,* 190 F.3d 410, 414 (6th Cir. 1999).

In the instant case, the United States conducted its own investigation of the alleged False Claim Act violations, which uncovered some arguably exculpatory material. Defendants contend that this case, like *Demjanjuk*, is quasi-criminal because a finding of liability on the government's claim (in this case, intentional fraud) would represent "a death penalty for the company [as well as] the destruction of the reputation of many fine scientists." (Supplemental Reply Mem. in Supp. of Mot. to Compel at 12.) While defendants' claim might include a bit of hyperbole, it suffices to say that, in this case, the government brings claims that carry potentially serious consequences, though not nearly as serious as those envisioned by the Court in *Demjanjuk*.

In *Sperry & Hutchinson,* the Southern District of New York stated that the *Brady* principle might apply in civil cases. *See id.* at 142. The *Sperry & Hutchinson* opinion is unpersuasive, however, for the reasons that the statement is dictum, the New York Court provides little analytical or case law to support its statement, and the case has never been favorably cited for that conclusion.

In *Los Alamos Constructors, Inc.,* the District of New Mexico reasoned that the unique obligations and responsibilities of government attorneys in criminal cases applied with equal force in civil cases:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal

prosecution is not that it shall win a case, but that justice shall be done.

382 F.Supp. at 1383 (citing *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). However, in *Los Alamos Constructors, Inc.,* the judge described the employment discrimination complaint as "a phantom legal conclusion" and a "skeleton complaint," which gave the defendant little or no facts on which to prepare a defense. *Id.* at 1374. The judge ordered that the "defendant is entitled to know the names of persons having knowledge of the facts of the case – knowledge of facts favorable to the government and facts favorable to defendant." *Id.* at 1383.

In the instant case, [ ] is aware of the charges and the underlying facts, and instead of seeking to find names of witnesses, [ ] seeks to discover materials prepared by government lawyers in preparation of the government's case.

Although the cases cited by the government relate to civil administrative hearings, they support the government's position that the *Brady* principle is limited to criminal cases. *Tandon v. Commissioner,* 2000 WL 331926 (6th Cir. Mar. 23, 2000); *NLRB v. Nueva Engineering, Inc.,* 761 F.2d 961 (4th Cir.1985); *Mister Discount Stockbrokers, Inc. v. SEC,* 768 F.2d 875 (7th Cir.1985). As discussed above, the Sixth Circuit, the only circuit court to support civil extension of *Brady,* backed away from its previous decision in *Demjanjuk* in the more recent *In the Matter of the Extradition of Michael John Drayer* case.

■■■ The Circuit Court's decisions cited above are not surprising because the consequences of a civil case are fundamentally different from criminal sanctions. In the instant case, the fact that defendants have been accused of civil fraud with potentially serious civil penalties does not turn the government's claims into criminal charges. In addition, the fact that defense counsel believes a finding of liability would harm the individual reputations of the defendant scientists and hurt the institutional reputation of [ ] does not automatically imbue the defendants with the due process protections that

are so carefully guarded in a criminal matter. Indeed, civil discovery has a "built-in" protection, which is designed to take into account fairness issues: when a party is able to establish substantial need and undue hardship, work product privileges are overcome. As discussed above, however, defendants have not met this standard.

To extend *Brady* to this civil case is both unnecessary and unwarranted: because they are in possession of the underlying documents, defendants could recreate the government's audit from materials to which they have access.

This Court declines to extend the application of *Brady* to this civil case. Accordingly, defendants' motion to compel this information under the *Brady* doctrine is DENIED.

### V. DOCUMENTS RELATING TO [ ]'S PLACEMENT ON AND REMOVAL FROM THE ATP WEBSITE

■■■ Defendants next seek an order compelling the United States to produce documents concerning the Department of Commerce's decision to place [ ] on its ATP website, information concerning [ ] that is or was contained on the site, and documents relating to the Department of Commerce's decision to remove [ ] from the website. The United States opposes on the ground that this information has no relevance to the issues in this case and will not lead to the discovery of admissible evidence. The defendants respond that the requested information is relevant to show how the Department of Justice characterized [ ] purported misconduct.

■■■ Non-privileged material is discoverable when it is relevant or if it appears that the information sought appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The test is relevancy to the subject matter rather than admissibility at trial. *See, e.g., Coleman v. American Red Cross,* 23 F.3d 1091, 1097 (6th Cir.1994) (court was not permitted to preclude discovery of arguably relevant information solely because the information would be speculative if introduced at trial).

It appears that the information sought by [ ] could lead to evidence that would be relevant to [ ] defense that the government's initial characterization of [ ]'s purported fraud differs from the claims asserted thereafter against [ ]. It does not appear to be protected by work product immunity or other privileges.

The government is ordered to provide to defendants within thirty (30) days of this Order a privilege log identifying what documents, if any, are claimed to be subject to privileges, including work product immunity, setting forth as to each document so identified information about the document's author, recipient, date, and the factual basis for the assertion of such privilege or immunity. Accordingly, defendants' motion to compel materials is GRANTED, except as to specifically identified documents on a privilege log.

### VI. ALL DEPARTMENT OF COMMERCE DOCUMENTS CONCERNING [ ]

Defendants also seek an order compelling the United States to produce documents and files in the possession of the Department of Commerce relating to or concerning [ ]. The Court has previously ordered that the government should provide a more adequate privilege log with reference to these documents. Such a privilege log shall be provided to defendants within 30 days of the date of this Order and shall provide information about the document's author, recipient, date, and the factual basis for the assertion of the privilege or work-product immunity.

Based on the foregoing, the Court rules upon defendants' motion to compel as set forth in this Order.

IT IS SO ORDERED.

### ADDENDUM

**JOINT STIPULATED MOTION FOR PUBLICATION OF ORDER ON DEFENDANTS' MOTION TO COMPEL**

Pursuant to and consistent with Paragraph 31 of the Settlement Agreement in this case, a copy of which is attached hereto as Exhibit 1, plaintiff United States and relators [ ] (collectively Relators), and defendants [ ] (collectively Defendants), hereby stipulate as follows:

**ADDENDUM**—Continued

1. Attached as Exhibit 2 to this Joint Stipulation is a redacted form of this Court's Order On Defendants' Motion To Compel filed April 1, 2001 (the Order). The Order decides several significant discovery issues.

2. The Order was sealed when filed because it referred to matters that had been placed under seal in another proceeding in this Court. That proceeding remains under seal.

3. All references to the sealed proceeding have been redacted. In addition, all references to the defendants have been redacted, at the request of the defendants.

4. The United States requests that the attached redacted Order be published because it concerns significant, recurring discovery issues arising under the False Claims Act, 31 U.S.C. § 3729–33. The defendants have no objection to such publication.

Accordingly, the Parties hereby stipulate that the attached Order may be published, consistent with the Settlement Agreement.

### ORDER

IT IS SO ORDERED this 23rd day of August, 2002.