**SIMMONS FOODS, INC., Plaintiff,**

v.

**Jeffrey L. WILLIS, et al., Defendants.**

No. 97–4192–RDR.

United States District Court, D. Kansas.

Feb. 2, 2000.

Brock R. Snyder, Law Office of Brock R. Snyder, Topeka, KS, Troy A. Unruh, The Advocates Group, Pittsburg, KS, for plaintiff.

James M. Yeretsky, Gregory F. Maher, Yeretsky & Maher, L.L.C., Brian J. Amick, Brian G. Boos, Moser & Marsalek, P.C., Kansas City, MO, for Jeffrey L. Willis and Willis & Holmes PA.

Richard L. Honeyman, F. James Robinson, Jr., Vince P. Wheeler, Kahrs, Nelson, Fanning, Wichita, KS, for Bill H. Raymond and Schultz & Lonker Chtd.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Before the Court is Plaintiff's motion to quash a subpoena commanding Plaintiff's counsel Brock Snyder to appear for deposition and for protective order (doc. 108) and Plaintiff's motion to determine as a matter of law the viability of a comparative negligence affirmative defense (doc. 125).

### I. Factual Background

On April 5, 1995, Teets Food Distribution Company ("the debtor" or "Teets") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Pursuant to a provision within the bankruptcy code, the debtor continued to operate its business as a debtor in possession. Jeffrey L. Willis of Willis & Holmes, P.A. and Bill H. Raymond of Schultz & Lonker, Chtd. (collectively "Defendants") served as attorneys for the debtor throughout these bankruptcy proceedings.

On or about April 13, 1995, the debtor filed an adversary proceeding against Simmons Foods, Inc. ("Simmons" or "Plaintiff") seeking to set aside Simmons' claimed security interest in the debtor's accounts receivables. On October 10, 1995, the debtor filed a Plan of Reorganization and a Disclosure Statement which, consistent with assertions within the pending adversary proceeding, identified Simmons as an unsecured creditor.

On January 12, 1996, however, the debtor filed an Amended Plan and Disclosure Statement. The Amended Plan identified Simmons as a secured creditor and provided for payment to Simmons upon collection of the debtor's accounts receivables. Simmons asserts it voted in favor of the debtor's reorganization plan on the basis of its treatment as a secured creditor pursuant to this January 12, 1996 Amended Plan and Disclosure Statement.

Simmons received its first payment under the approved Amended Plan on March 31, 1996 but did not receive any further payments. Simmons contends it did not receive further payments due to the fact that many of the accounts receivables identified in the debtor's Amended Plan and Disclosure Statement were uncollectible bad debts. Simmons further contends that, although the attorneys representing the debtors knew or should have known when it filed the Amended Plan and Disclosure Statement that many of the accounts receivables were uncollectible, the debtor's attorneys failed to communicate this information to Simmons or to the Bankruptcy Court. Simmons now brings the instant lawsuit against the debtor's attorneys for negligence, detrimental reliance and fraud in conjunction with the debtor's bankruptcy proceedings. Relevant to the motion pending before the Court, attorney Brock Snyder ("Snyder") represented Simmons in the underlying bankruptcy proceedings and currently represents plaintiff Simmons in this action as well.

On June 17, 1999, the Willis Defendants served Snyder with a subpoena commanding his appearance for deposition. The subpoena also commanded Snyder bring to the deposition his entire file regarding representation of Simmons in the Teets bankruptcy matter. Plaintiff moves to quash the Snyder subpoena for deposition and requests the Court issue a protective order prohibiting the deposition altogether. In support of its request, Plaintiff argues the information sought is protected from disclosure by the attorney-client privilege and the work-product doctrine.

Conversely, the Willis Defendants claim they are entitled to depose Mr. Snyder and discover privileged information he possesses, because Snyder's actions (or failures to act) during the Teets bankruptcy proceedings are critical to determine the proximate cause of Plaintiff's damages. More specifically, the Willis Defendants specifically allege as an affirmative defense to this action that the

> injuries and damages claimed by Plaintiff in all counts of the Complaint were directly and proximately caused by the negligence of Plaintiff or the negligence of other third persons or parties over whom these answering defendants have no right or duty to control and cannot be held legally liable therefor. Furthermore, the negligence of all persons or parties to the subject occurrence must be compared pursuant to K.S.A. 60–258a.

(Answer of Willis Defendants at ¶ 15, doc. 32.) The Willis Defendants assert Snyder is a "third person" whose negligence contributed to Plaintiff's damages. Thus, they contend Snyder's actions or failure to act during the bankruptcy proceedings, whether privileged or not, are discoverable for comparative fault purposes. The question thus presented is whether the deposition subpoena should be quashed, and/or a protective order issued, to prevent the Willis Defendants from deposing Plaintiff's attorney Brock Snyder.

## II. *Discussion*

██ ██ The court "shall quash or modify [a] subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies, or [if it] subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv). Moreover, and for good cause shown, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). Such orders may include completely prohibiting certain discovery or imposing a designated method by which discovery must be conducted. Fed. R.Civ.P. 26(c)(1) and (3). One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan.1996.)

██ "An attorney, even an attorney for a party to the suit, is subject to being deposed." *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D.Kan.1996) (quoting *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D.Kan.1994)). "Courts do not favor thwarting a deposition." *Id.* (citing *Leighr v. Beverly Enterprises–Kansas Inc.*, 164 F.R.D. 550, 552 (D.Kan.1996)). Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition. *Id.* (citation omitted.) A request to take the deposition of an attorney for a party may, however, constitute an extraordinary circumstance justifying departure from the normal rule. *Id.* "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Id.* (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990)).

██ Neither the Tenth Circuit nor the District of Kansas have adopted a definitive test to determine when it is appropriate for a court to grant a protective order prohibiting the deposition of a party's attorney. The rule most frequently cited by the courts, however, is set forth in the case of *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir.1986). The *Shelton* court held that depositions of opposing counsel should be limited to those circumstances when the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Id.* The burden is on the party seeking the deposition to establish that the criteria are met. *Id.*

██ Although the Tenth Circuit Court of Appeals favorably refers to the *Shelton* criteria in the case of *Boughton v. Cotter Corp.*, 65 F.3d 823, 829–31 (10th Cir. 1995) (holding it was not an abuse of discretion to preclude the deposition of opposing counsel when required to protect a party from an unnecessary burden pursuant to Fed.R.Civ.P. 26(c)), the *Boughton* court declined to hold that a court *must* permit parties to depose opposing counsel upon a showing that the three factors are satisfied. *Id.* (emphasis added.) As interpreted by this Court, *Boughton* dictates that, even when a party satisfies all three of the *Shelton* factors, courts may prohibit such depositions "in other appropriate situations." *Id.* This Court further understands that *Boughton* does not require lower courts to utilize a definitive test (such as the *Shelton* criteria) in every case where opposing counsel's deposition is sought. *Accord, United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249–50 (D.Kan.1995) (where parties agreed to deposition of attorney but disagreed as to scope of that attorney deposition, court noted that *Boughton* does not require lower courts to utilize a definitive test in every case where

opposing counsel's deposition is sought. The court subsequently elected not to apply the *Shelton* criteria enunciated to determine whether good cause had been shown to warrant entry of a protective order with regard to scope of attorney's deposition.)

Notably, many Kansas federal courts have utilized all or some of the criteria implemented by the *Shelton* court (both before and after *Boughton* was decided) to help them determine whether or not to issue a protective order to preclude the deposition of opposing counsel. *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D.Kan.1996); *Williams v. KOPCO, Inc.*, 162 F.R.D. 670, 673 (D.Kan. 1995); *Kelling v. Bridgestone*, 153 F.R.D. 170, 171 (D.Kan.1994). Given this precedent, the Court will consider the *Shelton* criteria in reviewing the facts presented.

## A. *Shelton* Condition One: Obtaining The Information From Another Source

The Willis Defendants seek information regarding Snyder's actions, and his failures to act, during the Teets bankruptcy proceedings in order to compare Snyder's fault to any fault assessed against them. The Willis Defendants seek (1) an explanation of Snyder's review of Teets' financial records; (2) an explanation as to why Snyder ignored corporate agent Randolph Hart's ("Hart") concerns about Mr. Ely's financial disclosures; (3) disclosure of the advice Snyder gave to Hart concerning approval or disapproval of the reorganization plan; and (4) an explanation of Snyder's basis for advising Hart to approve the reorganization plan. (Defendants' Opposition Brief at p. 6, doc. 113.)

The Willis Defendants maintain they need to depose Snyder himself to obtain this information because it is not available from any other source. They suggest the only other individual who possesses the information sought is Simmons' corporate agent Randolph Hart. They further suggest Hart repeatedly refuses in deposition to answer questions or produce documents on grounds that the information and documents are protected by the attorney-client privilege and the work-product doctrine.

The Willis Defendants have not adequately shown at this stage of discovery that all of the information they seek from Snyder is unavailable from other sources. The relevant discoverable information appears equally available from Hart. Seeking the information from opposing counsel because another witness repeatedly refuses to disclose the information on grounds of privilege appears inconsistent with applicable law in this jurisdiction prohibiting parties from unconditionally deposing attorneys. *See Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. at 689. The Willis Defendants could have moved to compel Hart to provide the relevant discoverable information in lieu of trying to obtain it from opposing counsel. In both instances, they must overcome assertions of privilege.

Moreover, the Willis Defendants are free to ask Simmons employees or representatives questions about Teets' financial records, Hart's concerns about Mr. Ely's financial disclosures, the advice Snyder gave to Hart concerning approval or disapproval of the reorganization plan and the basis for that advice. There is no reason to believe that this information is in the exclusive possession of Simmons' attorney. The Willis Defendants have failed to "demonstrate that the [attorney] deposition [at issue] is the only reasonably practical means available for obtaining the information." *Id.*

## B. *Shelton* Condition Two: Whether The Information Sought Is Nonprivileged

Under Kansas law, the essential elements of privilege are:

(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

*State v. Maxwell*, 10 Kan.App.2d 62, 63, 691 P.2d 1316, 1319 (1984) (citation omitted); *see*

*also,* K.S.A. 60–426 (1994).[1] "The privilege 'protects confidential communications made by a client to an attorney in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor.' " *ERA Franchise Sys., Inc. v. Northern Ins. Co.,* 183 F.R.D. 276, 278 (D.Kan.1998) (quoting *United States v. Waugh,* 974 F.2d 1346, No. 91–5101, 1992 WL 201076, at *4 (10th Cir. Aug. 14, 1992) (Table; text in Westlaw) (citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976))). " '[C]ommunication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." K.S.A. 60–426(c)(2).

In this instance, the parties do not dispute that the privilege would apply in the absence of waiver; instead, they disagree as to whether Plaintiff has waived it. More specifically, the Willis Defendants argue that (1) the attorney-client communications here fall under the statutory exception to the privilege because they "are relevant to a breach of duty by the lawyer to his client;" (2) Plaintiff waived the attorney-client privilege when Simmons' corporate agent Randolph Hart' voluntarily disclosed at his deposition portions of a communication between he and Snyder; and (3) Plaintiff waived the attorney-client privilege and the protection afforded by the work-product doctrine by affirmatively placing communications and documents "at issue" in this lawsuit.

### 1. The Statutory Exception to the Attorney–Client Privilege

■ The Willis Defendants assert the information sought from Snyder is nonprivileged because the attorney-client communica-

tions fall under a statutory exception to the privilege. K.S.A. 60–426(b)(3) creates an exception to the attorney-client privilege for communications that "are relevant to a breach of duty by the lawyer to his client." K.S.A. 60–426(b)(3). Contrary to what the Willis Defendants claim, however, the statute is not a general exception allowing disclosure of any privileged communication simply because it is raised in litigation. A plain reading of the statute indicates a waiver occurs when either the attorney or client charges the other with a breach of duty arising from their professional relationship. *See e.g., Dyson v. Hempe,* 140 Wis.2d 792, 810–11, 413 N.W.2d 379, 387 (Wis.Ct.App.1987) (privilege deemed to have been waived under a statutory exception similar to the one in Kansas when client sues his former lawyer for malpractice); *State v. Flores,* 170 Wis.2d 272, 277–78, 488 N.W.2d 116, 118 (Wis.Ct.App. 1992) (privilege deemed to have been waived under a statutory exception similar to the one in Kansas when client seeks to reverse a criminal conviction on the grounds that former attorney rendered ineffective assistance of counsel.)

[17] In situations where an attorney or client charges the other with a breach of duty, it would be unjust for a party to that relationship to maintain the privilege so as to preclude disclosure of confidential communications relevant to the issue of breach. This rationale, however, has no application to the present case. Instead, the Willis Defendants seek disclosure of communications by implying that Plaintiff's attorney may have breached a duty to Plaintiff during the course of the attorney-client relationship between Plaintiff and Plaintiff's attorney [2]—a relationship to which the Willis Defendants do not have

---

1. There is no real conflict between federal and Kansas law regarding the attorney-client privilege. *See Hiskett v. Wal–Mart Stores, Inc.,* 180 F.R.D. 403, 405 (D.Kan.1998); *Marten v. Yellow Freight Sys., Inc.,* No. Civ.A. 96–2013–GTV, 1998 WL 13244, at *4–6 (D.Kan. Jan. 6, 1998). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions." *In re A.H. Robins Co.,* 107 F.R.D. 2, 8 (D.Kan.1985) (citation omitted.) Whether the court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies.

*See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 196 n. 3 (D.Kan. 1993) (citing K.S.A. 60–426; *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992)). Accordingly, the Court will at times utilize federal case law when it appears consistent with the Kansas law of privilege.

2. Notably, the Willis Defendants point to no competent evidence to support their general allegation that a duty was breached.

privity. This Court finds the statutory exception to the attorney-client privilege was not designed to permit such a result.

### 2. Waiver of the Attorney–Client Privilege by Voluntary Disclosure

In further support of the assertion that the information they seek from Snyder is non-privileged, the Willis Defendants assert Plaintiff waived the attorney-client privilege when Simmons' corporate agent Randolph Hart voluntarily disclosed at his deposition the following portion of a communication between he and Snyder:

Q: Based on the concerns you raised in that memorandum, which was provided to the creditors committee, do you know why they went ahead and approved the plan based on those concerns?

A: Well, there was—there was a great deal of concern in all parties—and I think the—and the creditors committee minutes reflect that—about what we were going to do, and the viability of the plan, and the lack of information that we had from your clients relative to things that we'd asked for, and I—you know, I—as I recall, I—I believe that—that we may have had some provisions—some what we call drop-dead provisions—that said, basically, if they could perform at a certain level and they could demonstrate that level, that we'd approve the plan. At the time—

Q: Did that happen, if you know?

A: They met some—they met some of those—they met some of those—they met—their financial statements indicated that they met some of those provisions, and the committee was really, quite frankly, very divided on whether to vote for the plan—members of the committee were, quite frankly, very divided on what to do about that as we talked about it after we voted. *Mr. Snyder, here, informed me that—and I believe his counsel was correct, that since they met at least some for those—at last some of those goals, that we had an* *honorable obligation to vote for the plan because that was our agreement,* and despite my great misgivings and—and—and my un—discomfort with—that had been caused by a great deal of information that we didn't get, I went ahead and voted for the plan to honor my agreement.

(Hart Depo. at p. 49, line 3 to p. 50, line 6, attached to Raymond Defendants' Memorandum in Response to Plaintiff's Motion for Determination of Legal Issue, doc. 129 (emphasis added.))

█ To be sure, there is authority that attorney-client communications cannot be used both as a sword and a shield, i.e., when a party defends the conduct which is the subject of the suit by relying on advice of counsel. *See FDIC v. Wise,* 139 F.R.D. 168 (D.Colo.1991). Here, however, Hart did not attempt to justify his vote in favor of the reorganization plan on the basis of advice of counsel, and Hart did not claim that he voted for the plan because Mr. Snyder told him to vote for the plan. Although Hart references a statement made to him by his attorney, the deposition transcript excerpt reflects that Hart goes to justify his decision to vote for the plan based on his own desire to honor a prior agreement to Teets that he would vote for the plan if they accomplished certain goals. *See Motley v. Marathon Oil. Co.,* 71 F.3d 1547, 1552 (10th Cir.1995) (holding interrogatory answer stating manager made change, upon advice from counsel, to a list of employees to be fired did not constitute waiver of attorney-client privilege because former employer defended its decision to fire former employee on grounds of insufficient work instead of advice of counsel.) The Court finds Plaintiff did not waive the attorney-client privilege through the referenced deposition testimony of Simmons corporate agent Randolph Hart.

### 3. The "At Issue" Waiver

The Willis Defendants finally assert Plaintiff waived the attorney-client privilege by putting the confidential communications "at issue" in this lawsuit. Defendants rely on the so-called "at issue" or implied waiver principle. *See WLIG–TV, Inc. v. Cablevision*

*Sys. Corp.,* 879 F.Supp. 229, 234 (E.D.N.Y. 1994) (recognizing that both names refer to the same principle.) There has been no definitive test utilized in Kansas regarding how to determine if a privilege has been impliedly waived.

As a general rule, courts have followed three different approaches when ruling on whether a party has waived its privilege by placing protected information "at issue." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 699 (10th Cir.1998). The first theory is the "automatic waiver" rule. *Id.* The second theory utilizes a test to evaluate the need for discovery against the importance of the privilege. *Id.* The third theory provides for waiver of the attorney-client privilege if, and only if, "the litigant directly puts the attorney's advice at issue in the litigation." *Id.* at 700.

■ As noted above, Kansas courts have not spoken to which of these three approaches should be followed with respect to the "at issue" waiver of the attorney-client privilege. If there is no applicable statute or if the Kansas Supreme Court has not spoken on an issue, this Court must determine how it believes the Kansas Supreme Court would rule if confronted with the question. *Frontier Refining Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d at 700 (where Wyoming Supreme Court has not directly announced a definitive test on issue, federal court must predict how that court would resolve it.) In making this determination, the court should consider "other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Id.* (citing *Burns v. International Ins. Co.,* 929 F.2d 1422, 1424 (9th Cir.1991)).

In *Frontier Refining,* the Tenth Circuit Court of Appeals recently undertook a similar task with respect to Wyoming law. That case provides the following assistance:

Courts generally employ some version of one of the three following general approaches to determine whether a litigant has waived the attorney-client privilege. The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives

the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case. Finally, several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation.

136 F.3d at 699 (citations omitted.) The Tenth Circuit limited its discussion to these three general approaches. This Court will do likewise. Although other approaches may exist, there is no reason to address them, as neither the parties nor the courts of Kansas suggest their applicability. As the Tenth Circuit apparently concluded in *Frontier Refining,* the court need only consider the stated three general approaches in determining which rule a state court would apply. It would be a daunting task, furthermore, to attempt a fully encompassing analysis of all existing approaches.

■ The Tenth Circuit concluded that the courts of Wyoming would reject the "automatic waiver" rule. *Id.* at 700–01. For the reasons stated in the *Frontier* opinion, this Court concludes Kansas would not adopt the "automatic waiver" rule. The rule "has been roundly criticized in the circuits, does not adequately account for the importance of the attorney-client privilege to the adversary system, and is more applicable to constitutional, rather than attorney-client, privileges." *Id.* at 700. The Supreme Court of Kansas has emphasized the importance of the attorney-client privilege to the administration of justice. *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisberg Grain Co.,* 250 Kan. 54, 63, 824 P.2d 933, 940 (1992). It cautioned that "[t]he privilege should not be set aside lightly." *Id.* The automatic waiver rule is inconsistent with that philosophy. "Carried to its ultimate conclusion, the automatic waiver rule would destroy the attorney-client privilege any time

a litigant asserted a claim or defense." T. Maxfield Bahner & Michael L. Gallion, *Waiver of Attorney-client Privilege Via Issue Injection: A Call for Uniformity*, 65 Def. Couns. J, 199, 201 (Apr.1998).

The Court thus has two competing approaches from which to choose. The Tenth Circuit found no need to choose between them, because the party seeking the privileged information failed to demonstrate its entitlement to the privileged materials under the more liberal, remaining approach to waiver, *i.e.*, the three-prong test enunciated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975) (evaluating the need for discovery against the importance of the privilege.) *Frontier Refining, Inc.*, 136 F.3d at 701. Again, this Court finds likewise.

■■■ Under the *Hearn* test, each of the following conditions must exist to establish waiver: (1) the party asserting the privilege affirmatively acted in a manner which resulted in the assertion of the privilege; (2) through the affirmative act, that party placed the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to its defense. 68 F.R.D. at 581. For privileged information to be "vital," it must be otherwise unavailable from any other source. *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d at 701 (citing *Hearn*, 68 F.R.D. at 581).

■■■ The Willis Defendants repeatedly assert that the substance of Plaintiff's confidential communications with its counsel are "relevant" and "at issue" as a result of the comparative negligence affirmative defense asserted by them. (Defendants' Opposition Brief at p. 3, doc. 113 ("Mr. Snyder's actions or failure to act during the Teets bankruptcy are relevant for comparative fault purposes"); Defendants' Opposition Brief at p. 4, doc. 113 ("[T]he action, or inaction, of Brock Snyder in the Teets bankruptcy, while representing Simmons Foods, is relevant and material, and is clearly at issue in this case"); Defendants' Opposition Brief at p. 6, doc. 113 ("Mr. Snyder's testimony clearly has the potential to be substantially useful to Defendants.")) The fact that the communications may be "relevant," "at issue" or "substantial-

ly useful," however, is not sufficient to satisfy the standard articulated in *Hearn*, 68 F.R.D. at 581. According to *Hearn*, the confidential communications must be at issue *as a result of an affirmative act* by Plaintiff. *Id.* (emphasis added.)

Although there is no clear-cut definition of "affirmative act" in the implied waiver context, asserting a claim of legal malpractice against former counsel has been construed to affirmatively place relevant attorney-client privileged communications at issue. *See, e.g., Smith, Smith & Kring v. Superior Court*, 60 Cal.App.4th 573, 70 Cal.Rptr.2d 507 (Cal. App. 4 Dist.1997) (client's allegation of legal malpractice necessarily waives claims of privilege); *State v. Simpson*, 200 Wis.2d 798, 548 N.W.2d 105 (Wis.Ct.App.1996) (attorney-client privilege disappears when client sues former lawyer for malpractice); *Adelman v. Adelman*, 561 So.2d 671 (Fla. Ct.App. 3 Dist. 1990) (in suing an attorney for legal malpractice, client waives attorney-client privileged confidential information relating to attorney's representation); *Tunick v. Day, Berry & Howard*, 40 Conn.Supp. 216, 486 A.2d 1147 (Conn.Super.1984) (claim of legal malpractice destroys attorney-client privilege.)

Some courts have extended the concept of implied waiver to relevant attorney-client privileged communications between a client and *other retained counsel. See Pappas v. Holloway*, 114 Wash.2d 198, 787 P.2d 30 (Wash.1990) (recognizing the implied waiver concept in the context of a third-party malpractice claim against former client's other attorneys) (emphasis added.) *See also, Rutgard v. Haynes*, 185 F.R.D. 596, 599–600 (S.D.Cal.1999) (holding plaintiff waived attorney-client privilege between himself and subsequently retained attorney by putting "in issue" reasonableness of attorney's actions in recommending settlement.) Although the facts are different than those before the Court, the analysis used by the courts is instructive.

In *Pappas*, the plaintiffs sued Harold and Rosemarie Holloway for selling them infected cattle. The litigation spanned several years, during the course of which four different attorneys (including the plaintiff, Pappas) represented the Holloways at various times

throughout. Pappas withdrew from the case prior to the time the case went to trial. After an adverse outcome at trial, the Holloways' insurer arranged a settlement of all claims.

After withdrawing from the case, Pappas sued the Holloways for unpaid attorney fees. The Holloways counterclaimed against Pappas for legal malpractice. Pappas then brought third-party claims against all attorneys who represented the Holloways—both before and after Pappas withdrew from the case—in the infected cattle litigation. During discovery, Pappas sought confidential information regarding the cattle litigation from the third-party defendants. The third-party defendants objected on grounds of privilege.

The Washington Supreme Court held waiver may be extended to communications between the client and other retained counsel "[w]here it would be manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights." *Pappas*, 787 P.2d at 34. Importantly, the court held the Holloways placed their communications with other attorneys during the cattle litigation "at issue" when they counterclaimed against Pappas for legal malpractice. *Id.* at 36. In response to the counterclaim, Pappas asserted his legal advice was not the proximate cause of the Holloway's damages; instead, it was the legal advice of the third-party defendants which caused the Holloways' losses. *Id.* The court concluded Pappas needed access to communications between the Holloways and other counsel representing them in the cattle litigation in order to adequately defend himself against the charge of malpractice. The court went on to find it would be inequitable to deny Pappas access to the privileged information, because it was the Holloways themselves who put the communications at issue by filing the counterclaim.

Although in a limited sense it was Pappas' third-party complaints against the other attorneys which placed the privileged communications directly at issue, the "catalyst" for the third-party complaints was the Holloways' malpractice allegation. The court found Pappas was entitled to defend the malpractice charge on proximate cause grounds and that the Holloways ultimately were responsible for placing the disputed communications "at issue."

The *Pappas* court went out of its way to distinguish those cases where a claim of legal malpractice is insufficient to put the client's communications with other counsel at issue— i.e., where an attorney is retained by a client subsequent to any alleged acts of malpractice and no issues of proximate cause arise as to who committed the malpractice. To that end, the *Pappas* court specifically distinguished its facts from the facts in the case of *Jakobleff v. Cerrato*, 97 A.D.2d 834, 468 N.Y.S.2d 895 (N.Y.App.Div.1983), where the third-party attorney did not participate in the underlying litigation that formed the basis for the malpractice charge. *Pappas v. Holloway*, 787 P.2d at 35–36; *Jakobleff*, 468 N.Y.S.2d at 897. Unlike the third-party defendants in *Jakobleff*, the third-party defendants in *Pappas* all had the opportunity to commit or contribute to the legal malpractice alleged. *Id.; see also, Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill.2d 579, 244 Ill.Dec. 941, 727 N.E.2d 240 (2000) (distinguishing *Pappas*, the court held defendant's filing of legal malpractice counterclaim did not waive privilege between defendant and defendant's subsequent counsel because the third-party attorney did not participate in the underlying litigation that formed the basis for the malpractice charge).

The issue in this case and in *Pappas v. Holloway* are similar: in both cases the discovery sought deals with the specific negligent act or omission originally asserted, and the party bringing the negligence claim in the first instance was the "catalyst" for introduction of the comparative fault defense. It is Plaintiff who initiated this lawsuit. Among other things, Plaintiff alleges in the lawsuit that it was damaged as a result of Defendants' negligent conduct. In Kansas, the common law tort of negligence consists of the following elements: "a duty owed to the plaintiff, breach of that duty, that the breach of duty was the proximate cause of the plaintiff's injury, and that the plaintiff suffered

damages." *Honeycutt v. City of Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992).

As an affirmative defense, the Willis Defendants allege that it was not them, but Snyder, who breached a duty owed to Plaintiff, and thus Snyder who proximately caused the injuries which Plaintiff asserts it suffered. The Willis Defendants reasonably raise the affirmative defense of comparative negligence in alleging that Snyder could have breached a duty to his client and thus could have contributed to the damages Plaintiff alleges it suffered. As in *Pappas*, the Willis Defendants are entitled to defend the negligence charge brought against them on proximate cause grounds, and this Court finds it is fair to find Plaintiff the catalyst for placing the disputed communications "at issue."

■■■ Given the discussion above, all conditions of the three-prong test set forth in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975), have been satisfied. First, Plaintiff asserts the privilege as a result of affirmatively filing a negligence suit against Defendants for damages it sustained. Second, Plaintiff, by filing this lawsuit, placed the protected information "at issue" by making proximate cause relevant to the case. Third, application of the privilege denies the Willis Defendants access to information that is vital to defend on proximate cause grounds the negligence charge brought against them.[3] Given all three *Hearn* factors have been met, Plaintiff impliedly has waived the attorney-client privilege with regard to confidential communications arising out of the underlying bankruptcy proceeding. Accordingly, the Court finds the information sought by the Willis Defendants is both relevant and nonprivileged.

### C. *Shelton Condition Three: The Information is Crucial to Preparation of the Case*

■■■ The Willis Defendants seek information regarding Snyder's actions, and his failures to act, during the Teets bankruptcy

proceedings in order to compare any fault assessed against them to Snyder. The Willis Defendants reasonably raise the affirmative defense of comparative negligence in alleging that Snyder could have breached a duty to his client and thus could have contributed to the damages Plaintiff alleges it suffered. The Willis Defendants must have access to the privileged information at issue in order to determine if Snyder breached such a duty. Thus, the privileged information is crucial to preparation of the Willis Defendants' case.

### III. *Conclusion*

■■■ The Court finds that the information sought by the Willis Defendants satisfies two of the three conditions set forth in *Shelton:* the information is both relevant and crucial to preparation of their defense and the information sought is nonprivileged because the applicable privilege was waived by Plaintiff. *Shelton*, 805 F.2d 1323, 1326 (8th Cir.1986). The Court is not persuaded, however, that the first *Shelton* condition has been satisfied.

The Willis Defendants themselves consistently have maintained Hart possesses information they seek to discover, but Hart repeatedly refuses in deposition to answer questions or produce documents on grounds that the information is protected by the attorney-client privilege and the documents are protected by the work-product doctrine. Given the asserted privilege is now deemed by the Court as waived, there is a strong possibility the Willis Defendants can obtain the information from Hart or other sources, as opposed to Snyder. There is no reason to believe that the information sought is in the exclusive possession of Simmons' attorney. The Willis Defendants have failed to "demonstrate that the [attorney] deposition [at issue] is the only reasonably practical means available for obtaining the information." *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990). *See also Boughton v. Cotter Corp.*, 65 F.3d 823, 831 n.

---

**3.** In addition to the *Hearn* requirement that the information be substantively "vital" to their defense, the word "vital" appears to imply the information is available only from a privileged source. *See Frontier Refining, Inc.*, 136 F.3d at 701 (finding the word "vital" in the *Hearn* test to necessarily imply that the information is available from no other source.) There does not appear to be a nonprivileged source here from which to obtain the information sought by the Willis Defendants.

10 (10th Cir.1995) (burden on party seeking deposition to establish *Shelton* criteria met.)

Based on the discussion above, Plaintiff's motion to quash and for protective order prohibiting the deposition of Brock Snyder will be granted.[4]

Accordingly, it is hereby ORDERED that

(1) Plaintiff's motion to quash a subpoena commanding Brock Snyder to appear for deposition and for protective order (doc. 108) is granted; and

(2) The Court will not determine whether a comparative negligence affirmative defense is viable and thus Plaintiff's Motion to Determine as a Matter of Law Whether Plaintiff, Plaintiff's Attorney or the Unsecured Creditors' Committee Can Be Contributorily Negligent (doc. 125) is denied without prejudice.

**IT IS SO ORDERED.**

---

4. Pursuant to discussions at the October 27, 1999 status conference regarding pending motions and various scheduling issues, the Court granted the parties permission to file supplemental briefs addressing the issue of comparative negligence as that legal theory relates to any motion currently pending before the Court. The parties subsequently filed briefs on the issue of comparative negligence as it related to waiver of the attorney-client privilege. Given the legal analysis regarding waiver of the attorney-client privilege set forth *supra*, the Court finds the viability of Defendants' comparative negligence affirmative defense is not relevant to the Court's determination of the waiver issue. Therefore, the Court will not determine whether a comparative negligence affirmative defense is viable and Plaintiff's motion will be denied without prejudice to its refiling as a dispositive motion before the district court.