John WINTON and Evelyn Winton, Plaintiffs,

v.

BOARD OF COMMISSIONERS of TULSA COUNTY, OKLAHOMA, et al., Defendants.

No. 97–CV–841–J.

United States District Court, N.D. Oklahoma.

Aug. 16, 1999.

Donald Gregory Bledsoe, Tulsa, OK, Steven Alan Novick, Tulsa, OK, for plaintiffs.

Dick Austin Blakeley, Fred Jean Morgan, II, Linda Kay Greaves, District Attorney's Office, Tulsa, OK, for Tulsa County Board of County Commissioners, Oklahoma, Stanley Glanz, individually, Tulsa County Sheriff's Department, Stanley Glanz in his official capacity as Tulsa County Sheriff, Jack Putman, defendants.

Bobby L Latham, Jr, Kenneth E Wagner, Latham Stall Wagner & Steele PC, Tulsa, OK, for Wexford Health Source, sued as: Wexford Health Sources, Inc. a Florida Corporation, defendant.

## ORDER

JOYNER, United States Magistrate Judge.

Now before the Court is Plaintiffs' Motion to Compel. [Doc. No. 38]. The Court heard oral argument on this motion at a July 19, 1999 hearing. Plaintiffs seek to compel Defendants to produce certain documents as to which the Defendants have asserted either the attorney-client privilege and/or work product protection. For the reasons discussed below, the Court *DENIES* Plaintiffs' motion to compel.[1]

## I. DOCUMENT PRIVILEGE ISSUES

Defendants have submitted for *in camera* inspection those documents listed on their privilege log. Based on its review of these documents *in camera* the Court finds that all of the documents are protected by either the work product doctrine or the attorney-client privilege.

### A. ATTORNEY-CLIENT ISSUES

Plaintiffs argue that, as public entities, neither the Tulsa County Board of Commissioners nor the Tulsa County Sheriff's office is entitled to exercise an attorney-client privilege. The Court does not agree.

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a ... government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501. This is a civil rights action brought pursuant to 42 U.S.C. § 1983.

Thus, state law will not supply the rule of decision in this case. The Court must, therefore, decide attorney-client privilege issues by applying the principles of the common law in the light of reason and experience.

■ Defendants argue that the mere mention of political subdivisions in Rule 501 establishes that Congress intended to authorize an attorney-client privilege for political subdivisions. Defendants misread Rule 501. Rule 501 creates no substantive privileges by its own force. Rule 501 simply informs federal courts of how they are to determine whether a particular privilege exists. Federal courts must look to sources external to Rule 501 (i.e., state law or common law) to determine if a particular privilege (like the attorney-client privilege) exists in a certain context.

In 1972 the Supreme Court approved a set of proposed Rules of Evidence prepared by the Judicial Conference Advisory Committee on Rules of Evidence. *See Rules of Evidence for United States Courts and Magistrates*, 56 F.R.D. 183 (1972). Ultimately, Congress chose not to enact all of the proposed rules governing evidentiary privileges and, instead, adopted the text of Rule 501 quoted above.

> In rejecting the proposed Rules and enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis," 120 Cong.Rec. 40891 (1974) (statement of Rep. Hungate), and to leave the door open to change. *See also* S.Rep. No. 93–1277, p. 11 (1974); H.Rep. No. 93–650, p. 8 (1973), U.S.Code Cong. & Admin.News 1974, p. 7051.

*Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Despite Congress' failure to enact the proposed privilege rules, courts have continued to look to the proposed rules as a source for defining the common law of privileges. *See Sangre De Cristo Community Mental Health Service, Inc. v. United States*, 723 F.2d 1461, 1466 n. 4 (10th Cir.1983).

---

1. *See* Doc. No. 40 for the Court's previous rulings on other parts of Plaintiffs' motion to compel.

Although Congress chose not to adopt the proposed privilege rules, it did not disapprove them. The Senate Judiciary Committee's report on Rule 501 states as follows:

> It should be clearly understood that, in approving this general rule as to privileges, the action of Congress should not be understood as disapproving any recognition of ... any ... of the enumerated privileges contained in the Supreme Court rules. Rather, our action should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.

S.Rep. No. 93–1277, 93rd Cong., 2d Sess. 4, reprinted in 1974 U.S.C.C.A.N. 7051, 7059.

The Court finds that the proposed rules provide a useful reference point and offer guidance in defining the existence and scope of evidentiary privileges in the federal courts. The Court agrees with Judge Weinstein and Professor Berger, who observed that the proposed rules were:

> the culmination of three drafts prepared by an Advisory Committee consisting of judges, practicing lawyers, and academicians. In its seven years of work, the Committee considered hundreds of suggestions received in response to the circulation of drafts throughout the legal community. Finally, they were adopted by the Supreme Court by an eight to one vote.

2 *Weinstein's Evidence* 501–32 (1992).

■ Proposed Rule 503 explicitly recognizes that "public officers" and "public entities" who consult with a lawyer to obtain legal services may refuse to disclose confidential communications made for the purpose of facilitating the rendition of those legal services. In short, Proposed Rule 503 recognizes an attorney-client privilege for public entities and officers like the Defendants in this case.[2] The Court finds Rule 503's statement to be a sound reflection of the common law. Defendants may, therefore, exercise an attorney-client privilege.[3]

### B. WORK PRODUCT ISSUES

The Federal Rules of Civil Procedure define "work product" protection with the following language:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).[4]

To sustain a claim of work product protection, Defendants must demonstrate that the documents at issue were prepared in anticipation of litigation by or for Defendants or by or for Defendants' representatives. If Defendants can make the required showing to establish work product protection for a certain document, Plaintiffs can obtain production of that document only if they can demonstrate that they have "substantial need

---

**2.** *Rules of Evidence for United States Courts and Magistrates,* Proposed Rule 503(a) and Advisory Committee Notes to Subdivision (a), 56 F.R.D. 183, 235–37 (1972). *See also* Restatement (Third) of the Law Governing Lawyers § 124 (Proposed Final Draft No. 1 1996).

**3.** *See, e.g., Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980) (holding that where "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, [it]

needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors."). *See also Tax Analysts v. IRS,* 117 F.3d 607, 620 (D.C.Cir. 1997).

**4.** In federal courts, work product issues are governed, even in diversity cases, by a uniform federal standard embodied in Rule 26(b)(3). *Frontier Refining Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 702 n. 10 (10th Cir.1998).

of the materials in the preparation of [their] case and that [they are] unable without undue hardship to obtain the substantial equivalent of the materials by other means." If work product documents are produced to Plaintiffs based on Plaintiffs' substantial need, the Court will ensure that the mental impressions, conclusions, opinions, or legal theories of Defendants' attorneys are not disclosed.

> Like the Fourth Circuit, the Court takes notice of the fact that members of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, '[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials' with work product immunity. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir.1983). *See also Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D.D.C.1982) ('The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product.'). The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.

*National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984–85 (4th Cir.1992). *See also Binks Manufacturing Co. v. National Presto Industries,* 709 F.2d 1109, 1119 (7th Cir.1983).

 This case is a civil rights action under 42 U.S.C. § 1983 in which Plaintiffs are seeking monetary compensation for injuries allegedly caused by unconstitutional conditions at the Tulsa County Jail. Plaintiffs argue that if the documents Defendants seek to protect were in fact prepared in anticipation of litigation, a fact they do not concede, the litigation anticipated was litigation by the United States Department of Justice under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997–1997j ("CRIPA"), and not in anticipation of this civil rights action under § 1983. CRIPA authorizes the United States Attorney General to bring an action for equitable relief on behalf of all inmates who are being harmed by unconstitutional conditions of confinement. *See* 42 U.S.C. § 1997a(a). Plaintiffs argue that documents prepared in anticipation of CRIPA litigation, while protected by the work product doctrine in that litigation, should not be protected in a subsequent civil rights action under § 1983. The Court does not agree.

The Tenth Circuit has held that work product protection extended to materials prepared in anticipation of litigation A will be extended to litigation B, at least where litigation B is closely related to litigation A. *Gorman–Rupp,* 136 F.3d at 703–704. In *Gorman–Rupp,* a refinery operator paid money to settle personal injury claims made against the operator after an explosion and fire at the refinery. The refinery operator believed that malfunctioning centrifugal pumps in its "slop system" were responsible for the explosion and resulting fire. After settling the personal injury claims against it, the refinery operator sued the manufacturer of the pumps for equitable indemnity. Addressing the work product issues involved in that case, the Tenth Circuit found that the indemnity action was "unquestionably" closely related to the underlying personal injury action. *Id.*

As did the Court in *Gorman–Rupp,* this Court finds that this individual civil rights case under § 1983 is "unquestionably" closely related to the threatened litigation under CRIPA. Both are civil rights actions premised on the unconstitutional conditions at the Tulsa County Jail which result in harm to inmates. Thus, to the extent that work product protection would be extended to materials Defendants prepared in anticipation of litigation under CRIPA, that protection will also be extended to this civil rights case under § 1983.

Plaintiffs argue that the documents in questions were not "prepared in true anticipation of litigation, but were prepared in contemplation of settlement and in connection with negotiating, drafting and complying

with a 'Consent Order' and/or a settlement agreement." Doc. No. 43, p. 2. The Court does not generally disagree with Plaintiffs' characterization of the documents submitted *in camera*. There is no question that in early 1994 the United States Department of Justice ("DOJ") notified Defendants that it was beginning an investigation to determine whether to sue Defendants under CRIPA. The vast majority of the *in camera* documents were prepared by Defendants' attorneys during Defendants' negotiations with the DOJ, and it is true that Defendants wanted to avoid litigation and work out a compromise with the DOJ. The Court does not, however, agree with Plaintiffs' narrow reading of the work product doctrine's "in anticipation of litigation" requirement.

Plaintiffs argue that the documents in question were prepared in anticipation of "settlement," not in anticipation of "litigation." Plaintiffs set up a false dichotomy under the circumstances presented by this case. What was being "settled" was potential litigation under CRIPA. The only leverage DOJ had to cause Defendants to settle anything was the threat of CRIPA litigation. The Court finds, therefore, that Defendants could have justifiably anticipated CRIPA litigation since at least February 1994.

#### 1. Substantial Need

With the exception of the documents submitted *in camera,* Defendants have made the entirety of their DOJ/CRIPA file available to Plaintiffs. At the time these motions were briefed, Plaintiffs had not yet reviewed the Defendants' DOJ/CRIPA file. Plaintiffs have failed at this point to make a sufficient showing that they have a substantial need for the *in camera* documents or that they would be unable, without undue hardship, to obtain the substantial equivalent of the *in camera* materials by other means. The Court also notes that a majority of the *in camera* documents contain the mental impressions, conclusions, opinions, and legal theories of Defendants' attorneys, which the Court would protect in any event.

#### 2. Shield vs. Sword

█ Defendants' primary defense to this civil rights action will be that they did not act with "deliberate indifference"—the liability standard established for the civil rights claims asserted in Plaintiffs' Complaint. Plaintiffs argue that to demonstrate that they did not act with deliberate indifference, Defendants will likely argue that they relied on legal advice in making certain decision about the Tulsa County Jail. Plaintiffs argue that Defendants should not be permitted to argue reliance on legal advice, and at the same time protect the documents through which that legal advice was communicated. Permitting them to do so would, as Plaintiffs argue, allow Defendants to use the legal advice as both a sword and a shield.

The Court has found each of the *in camera* documents to be protected by either the attorney-client privilege or the work product doctrine, and has determined that they need not be produced to Plaintiffs. Defendants have made a choice to seek protection for these documents. As a consequence of that choice, Defendants will not be permitted to use any of these documents at trial for any purpose. Defendants may not offer them into evidence; they may not use them to refresh a witnesses recollection; and they may not seek to have the jury draw any inferences from the fact that the *in camera* documents were created or delivered to any particular individual. Defendants will not, therefore, be permitted to use the documents submitted *in camera* as both a shield and a sword.

### CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Compel is **DENIED.** [Doc. No. 38]. All of the documents submitted *in camera* are protected by either the attorney-client privilege or the work product doctrine. Defendants shall make arrangements to retrieve the *in camera* documents from the Court.

IT IS SO ORDERED.